UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**LORRAINE M. PADAVAN,**

   **Plaintiff**,

v.

**LINDA L. NAUGLE**, individually, and as Trustee of the Leonard J. Padavan and Linda L. Naugle Revocable Trust**,**

   **Defendant**.

_____/

Case No. 3:25cv34-TKW-HTC

### ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT

This case is before the Court based on Plaintiff's motion for partial summary judgment (Doc. 21). Upon due consideration of the motion and its attachment, Defendant's response in opposition (Doc. 25) and its attachment, Plaintiff's reply (Doc. 33), and the judicially noticed records (Docs. 29-1, 29-2, and 29-3), the Court finds that the motion is due to be granted in part and denied as moot in part.

### Facts

Plaintiff and Leonard J. Padavan ("the decedent") were married in 2002. They formally separated in January 2022, but they maintained separate residences since at least 2021.

In December 2021, the decedent purchased residential property in Pensacola, Florida ("the Halcyon Circle property") in his own name. The Halcyon Circle property became the decedent's homestead at some point after August 2022.

Plaintiff never lived in the Halcyon Circle property. She lived at another property in Pensacola (which was solely in her name) from May 2021 to June 2023 when she moved to Selbyville, Delaware.

In August 2024, the decedent conveyed the Halcyon Circle property by Special Warranty Deed[1] to the Leonard J. Padavan and Linda L. Naugle Revocable Trust ("the trust"). Plaintiff did not join the deed transferring the property to the trust.

Defendant is the trustee and beneficiary of the trust, and Plaintiff claims that she used fraud, coercion, and undue influence to get the decedent to transfer the Halcyon Circle property to the trust. Defendant denies that claim, and because the Court is required to view the evidence in the light most favorable to Defendant at this stage of the case, the Court assumes for purposes of ruling on Plaintiff's motion for partial summary judgment that the decedent conveyed the Halcyon Circle property to the trust by his own free will.

---

[1] The deed is recorded in the Escambia County Public Records at OR Book 9192, Page 1327. *See* Doc. 21-1 at 14.

In October 2024, Plaintiff's attorney sent the decedent a letter informing him that Plaintiff wanted a divorce. Attached to the letter was a proposed "Separation Agreement" (PSA).

The PSA stated that "[a]ny real property and/or homes in which either party has or may have any interest in shall not be divided, assigned, or otherwise included in the distribution or division of their marital estate" and that "each party releases and discharges the other party from all claims, rights and duties arising out of the marital relationship, including but not limited to any and all rights and claims by way of dower, curtesy, inheritance, descent, distribution, and from all other rights or claims as widow, heir, distribute, survivor, or next of kin, including any right of election against the other's estate." The PSA also stated that $105,708.50 that was withdrawn from the Plaintiff and decedent's joint bank account should be returned to Plaintiff.

In November 2024, Plaintiff's attorney sent the decedent a second letter requesting the return of the funds that had been withdrawn from the joint account along with a second draft of the PSA.[2] The letter stated that if the decedent returned the funds and signed the PSA, then Plaintiff would initiate the divorce proceedings.

---

[2] The only apparent difference between the first and second drafts of the PSA is the provision relating to life insurance.

3

The second draft of the PSA contained the same language concerning the parties' real property and waiver of spousal claims as the first draft.

The first draft of the PSA was not signed by either Plaintiff or the decedent. The second draft was signed by Plaintiff, but not the decedent.

The divorce proceeding was never filed because the decedent did not sign the PSA or return the funds that had been withdrawn from the parties' joint account. Thus, when the decedent died on November 16, 2024, he and Plaintiff were still legally married.

Defendant has been living in the Halcyon Circle property since the decedent's death, presumably with the permission of the trustee of the trust. However, she has not been given permission by Plaintiff to possess, occupy, or remain in the property.

**Procedural Background**

In January 2025, Plaintiff filed suit against Defendant in this Court to recover the assets that Defendant allegedly obtained from the decedent through fraud, duress, and undue influence—including the Halcyon Circle property, funds from the decedent's bank account, and the decedent's investment accounts. Most pertinent to the issues framed by Plaintiff's motion for partial summary judgment, the complaint seeks cancellation of the deed conveying the Halcyon Circle property to the trust (Count One) and possession of the property through claims for unlawful detainer (Count Four) and/or ejectment (Count Five).

Defendant responded to the complaint with a partial answer, a motion to dismiss, and a motion to strike. The Court denied both motions, *see* Docs. 14, 19, and Defendant thereafter filed an amended answer. The amended answer denies the complaint's substantive allegations and asserts various affirmative defenses, including waiver of any homestead rights in the Halcyon Circle property. *See* Doc. 20 at 21, 22 (second and sixth affirmative defenses).

Two days after the amended answer was filed (and well before the close of discovery),[3] Plaintiff filed a motion for partial summary judgment on Counts One, Four, and Five of the complaint. The motion is fully briefed and is ripe for a ruling. No hearing is needed to rule on the motion.

**Standard of Review**

Summary judgment is proper if there are no material facts in dispute and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). An issue of fact is "material" if it would change the outcome of the litigation, and a dispute about a material fact is "genuine" if the record evidence could lead a reasonable jury to find in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court's role at the summary judgment stage is not to weigh the evidence, but rather to determine whether there is evidence from which a reasonable jury could find in favor of the non-moving party. *Id.* at 252; *see*

---

[3] Discovery does not close until October 31, 2025. *See* Doc. 23 at ¶4.

*also Turner v. Phillips*, 2022 WL 458238, at *4 (11th Cir. Feb. 15, 2022) (explaining that the court's role at the summary judgment stage is to assess whether the evidence "is so one-sided that the result of any trial is inevitable").

Although "[t]here is no blanket prohibition on the granting of summary judgment motions before discovery has occurred . . . summary judgment should not be granted until the party opposing the motion has had an adequate opportunity to conduct discovery." *Estate of Todashev v. United States*, 815 F. App'x 446, 450 (11th Cir. 2020) (cleaned up). The remedy for a premature motion for summary judgment is Fed. R. Civ. P. 56(d), which permits the Court to defer consideration of the motion if the non-moving party shows by affidavit "that, for specified reasons, it cannot present facts essential to justify its opposition." *Id.*

## Analysis

The claims on which Plaintiff seeks summary judgment all turn on the question of whether the decedent's conveyance of the Halcyon Circle property to the trust was valid. If it was (or if there is a factual dispute as to whether it was), then Plaintiff is not entitled to summary judgment. However, if the conveyance was invalid (and no reasonable jury could find that Plaintiff waived her spousal rights in that property), then Plaintiff is entitled to a judgment canceling the deed and granting her possession of the property because it is undisputed that Defendant's authority to

occupy the property derives solely from that deed and that her possession and occupation of the property is not authorized by Plaintiff.[4]

In her motion, Plaintiff contends that the deed conveying the Halcyon Circle property to the trust was invalid because it was her husband's homestead property, and she did not join the deed. The Court agrees.

Under Florida law, homestead property is not subject to unilateral devise or alienation if the owner is survived by a spouse or a minor child. *See* art. X, §4(c), Fla. Const.; §732.4015(1), Fla. Stat. However, "[t]he owner of homestead real estate, *joined by the spouse if married*, may alienate the homestead by mortgage, sale or gift …." Art. X, §4(c), Fla. Const. (emphasis added).

Here, it is undisputed that the Halcyon Circle property was the decedent's homestead; that the decedent was still married to Plaintiff when he conveyed the property to the trust; and that Plaintiff did not join the deed conveying the property to the trust. Thus, based on the clear and unambiguous language emphasized above, the conveyance of the Halcyon Circle property to the trust was ineffective.

The fact that the Halcyon Circle property was not *Plaintiff's* homestead is immaterial, as is the fact that she never lived at the property. Indeed, the only

---

[4] On the latter point, Defendant did not present any specific argument in opposition to Plaintiff's motion for summary judgment on the unlawful detainer and ejectment claims.

7

material facts are that the property was *the decedent's* homestead and that he was married when he unilaterally executed the deed conveying the property to the trust.

This conclusion flows directly from the Florida Supreme Court's decision in *In re Estate of Scholtz*, 543 So. 2d 219 (Fla. 1989). In that case, the court approved the district court's decision affirming the trial court's determination that a decedent's homestead property could not be devised when he was survived by his wife, even though (1) the property was titled solely in the decedent's name, (2) the decedent and his wife were separated and living apart when the decedent died, and (3) the wife had never resided in the home with the decedent. *Id.* at 219, 221. The court based its decision on the 1985 amendment to article X, §4(c), which replaced "head of the family" with "a natural person" and thereby implied that the surviving spouse is "to receive the homestead regardless of whether the family unit continued to exist at the time of the owner's death." *Id.* at 221. The court acknowledged the potential inequity of the surviving spouse receiving the decedent's homestead under these circumstances, but it held that policy concerns over that outcome could not override the plain language in article X, §4(c). *Id.*; *see also id.* at 221-22 (McDonald, J., concurring specially) (concurring in the majority decision despite being "sympathetic" to the dissent's view that the purpose of the homestead is to protect the family and there is no compelling reason to restrict the devise of the homestead when no real family remains to be protected).

Although *Scholtz* involved the devise restriction in article X, §4(c), Florida courts have extended its reasoning to §4(c)'s restriction on alienation. Specifically, in *Isaacs v. Fannie Mae*, 373 So. 3d 1172 (Fla. 3d DCA 2022), the Court explained that "[w]e see no reason why *Scholtz* should not be equally applicable to cases involving the restraint on alienation, as there similarly is nothing in section 4 expressly conditioning the spousal joinder requirement on a non-owner spouse's residing at the homestead property at the time of the conveyance." *Id.* at 1175. Thus, Florida law is clear that spousal joinder is required to convey homestead property even if (as here) the spouse's name is not on the property and she was not residing at the property at the time of the conveyance.

The Court did not overlook the cases cited by Defendant for the proposition that a person cannot have two homesteads—either for purposes of the homestead tax exemption or for purposes of protection from judgment creditors. *See* Doc. 25 at 8-11 (citing, e.g., *Law v. Law*, 738 So. 2d 522 (Fla. 4th DCA 1999)). However, those cases are inapposite because they did not involve the narrow issue in this case—i.e., whether a non-owner spouse's joinder is required to convey the owner's homestead property—and the Court simply fails to see how the fact that the non-owner spouse may have another homestead has any bearing on that issue. Moreover, that argument is foreclosed by *Scholtz* and *In re Estate of Boyd*, 519 So. 2d 692 (Fla. 4th DCA 1988), both of which involved non-owner spouses that had established separate

9

homesteads but still received the benefit of the devise restriction in article X, §4(c).[5]

The Court also did not overlook Defendant's argument that Plaintiff waived her rights in the Halcyon Circle Property or, at least, that there is a factual dispute as to whether she did so. In support of this argument, Defendant relies on the provision in the PSA which states that the parties would retain their respective real property in their own names.

The problem with that argument is that it is undisputed the PSA was merely a *proposed* agreement that never took effect because the decedent did not sign it or return the funds that were withdrawn from the parties' joint account. The effectiveness of the PSA was plainly conditioned on (at least) the decedent returning the funds that were withdrawn from the joint account because the November 2024 letter that accompanied the second draft of the PSA expressly stated that "[i]f you agree to return the money to Mrs. Padavan, she agrees to file the attached documents, including the separation agreement …." Moreover, because the purpose of the PSA was to settle the claims that could have been raised in the divorce proceeding, its terms (including the parties' mutual waiver of rights) were necessarily conditioned on Plaintiff and the decedent getting a divorce—which never occurred.

---

[5] Those cases also foreclose Defendant's argument (*see* Doc. 25 at 11-14) that the benefits provided by §4(c) only apply to "family homes" and "intact families." *See Schlotz*, 543 So. 2d at 221; *Estate of Boyd*, 519 So. 2d at 692-93.

Defendant did not cite—nor could the Court find—any authority for the proposition that a spouse can waive the constitutional protection against alienation of the homestead through a conditional proposed agreement that was not signed by both parties. That being the case, Defendant's waiver argument (and the affirmative defenses asserting that issue) fails as a matter of law.[6]

On the issue of waiver, the Court did not overlook Defendant's assertion that summary judgment is "premature in that evidence of Defenses is likely to be elucidated by discovery." The problem with that argument is that Defendant did not comply with Rule 56(d) by submitting "an affidavit [or declaration] which sets forth with particularity the facts the moving party expects to discover and how those facts would create a genuine issue . . . precluding summary judgment." *Harbert Int'l v. James*, 157 F.3d 1271, 1280 (11th Cir. 1998). Moreover, the Court fails to see how the issues on which Defendant contends that discovery is needed (e.g., whether

---

[6] The Court did not overlook that Plaintiff signed the second draft of the PSA that was sent to the decedent in November 2024 and that Florida law allows a nonresident to waive homestead rights by signing a property settlement agreement in anticipation of divorce if that agreement is valid under the laws of the state where it was executed. *See* §732.702(1), Fla. Stat. However, in Delaware, martial agreements generally require the signature of both parties. *See* Del. Code Ann. tit. 13, §322. Moreover, as stated above, the effectiveness of the PSA was expressly conditioned on events that never occurred—namely, the decedent's agreement with the terms of the PSA, the return of the funds that were withdrawn from the joint account, and the dissolution of parties' marriage. Based on this conclusion, the Court need not consider whether the language of the PSA concerning waiver of marital rights and claims would have been sufficient to waive Plaintiff's spousal rights under article X, §4(c). *Cf. Steffens v. Evans*, 70 So. 3d 758, 760 (Fla. 4th DCA 2011) (affirming the probate court's determination that a spouse waived her homestead rights by executing a post-nuptial agreement that "refer[red] to the parties waiving 'all [property] rights' several times").

11

Defendant lied about being a retired physician or her alleged lack of concern about the decedent's health and well-being) have any bearing on the question of whether Plaintiff waived her spousal rights in the Halcyon Circle property in the manner required by Florida law. *See* note 6, *supra.*

In sum, for the reasons stated above, the decedent's conveyance of the Halcyon Circle property to the trust was legally ineffective because the decedent was married at the time and his spouse (Plaintiff) did not sign the deed as required by article X, §4(c), of the Florida Constitution. That, coupled with the fact that there is no evidence from which a jury could find that Plaintiff waived her spousal rights in the property, means that Plaintiff is entitled to summary judgment on Count One of the complaint and an order canceling the deed conveying the Halcyon Circle property to the trust.

The effect of that ruling is that the Halcyon Circle property was automatically transferred to Plaintiff upon the decedent's death. *See Aronson v. Aronson*, 81 So. 3d 515, 519 (Fla. 3d DCA 2012) ("At the moment of [the decedent's] death, his homestead property passed outside of probate, . . . in a twinkle of an eye, as it were, to his wife . . .") (cleaned up); *see also Clifton v. Clifton*, 553 So. 2d 192, 194 n.3 (Fla. 5th DCA 1989) ("Homestead property . . . passes outside of the probate estate."). That, in turn, means that Plaintiff (not the trust) is the rightful owner of the property.

12

That ruling, coupled with the undisputed fact that Plaintiff has not given Defendant permission to possess, occupy, or remain in the Halcyon Circle property, also entitles Plaintiff to partial summary judgment on the unlawful detention claim in Count Four of the complaint.[7] *See* §82.03(1), Fla. Stat. ("A person entitled to possession of real property . . . has a cause of action against a person who obtained possession of that real property by … unlawful detention."); §82.01(4), Fla. Stat. (explaining that "unlawful detention" involves possessing real property "without the consent of a person entitled to possession of [it]"); *Thompson v. Thompson*, 342 So. 3d 818, 820 (Fla. 3d DCA 2022) (explaining that the "essence" of an unlawful detainer claim is the defendant's unlawful withholding of possession from the owner) (quoting *Se. Fid. Ins. Co. v. Berman*, 231 So. 2d 249, 251 (Fla. 3d DCA 1970)). That ruling, in turn, renders Count Five moot. *See Thompson*, 342 So. 3d at 820 (explaining that unlawful detainer claims concern possession and ejectment claims concern issues of title).

## Conclusion

In sum, for the reasons stated above, it is **ORDERED** that:

---

[7] The Court defers consideration of any claims for damages under this count. *See* §82.03(3), Fla. Stat. (providing for bifurcation of claims for possession and damages arising out of the alleged unlawful detainer of real property).

1. Plaintiff's motion for partial summary judgment (Doc. 21) is **GRANTED** as to Counts One and Four of the complaint and **DENIED as moot** as to Count Five.

2. Pursuant to Fed. R. Civ. P. 54(b),[8] the Clerk shall enter a partial summary judgment stating:

> Summary judgment is entered in favor of Plaintiff Lorraine M. Padavan and against Defendant Linda L. Naugle on Counts One and Four of the complaint, and:
>
> 1. The Special Warranty Deed dated August 12, 2024, between Leonard J. Padavan and the Leonard J. Padavan and Linda L. Naugle Revocable Trust for the real property located at 750 Halcyon Circle, Pensacola, Florida ("the Property") is hereby **CANCELED**.
>
> 2. Title to the Property was vested in Plaintiff upon the death of Leonard J. Padavan on November 16, 2024, by operation of article X, §4(c) of the Florida Constitution.
>
> 3. Plaintiff is entitled to possession of the Property.
>
> 4. The Clerk shall, upon proper motion, issue any necessary writs to execute on this judgment.

3. Count Five of the complaint is **DISMISSED as moot**.

---

[8] The Court finds no just reason to delay entry of judgment on the claims resolved in this Order because (1) the factual and legal issues on which the other claims are based are distinct from those relating to the ownership and possession of the Halcyon Circle property, (2) the claims resolved by this Order did not present close questions, and (3) Plaintiff should not have to wait until the end of the case to obtain possession of the Halcyon Circle property. That said, because the Court recognizes that enforcement of the partial summary judgment will result in Defendant being removed from the home in which she has lived for several years, the Court will, upon proper motion (preferably one agreed upon by the parties during the 14-day period provided in paragraph 4 of this Order), consider staying execution of the judgment pending appeal if appropriate bond or other security (e.g., monthly rent payments into escrow) is provided. *See* Fed. R. Civ. P. 62.

4.    The partial summary judgment is stayed for 14 days to give Defendant an opportunity to appeal.

5.    The Court retains jurisdiction over all claims not addressed in this Order, including any claims for damages under Count Four.

**DONE and ORDERED** this 25th day of April, 2025.

_____
**T. KENT WETHERELL, II
UNITED STATES DISTRICT JUDGE**